1  Vanessa R. Waldref
2  United States Attorney
   Eastern District of Washington
3  Patrick J. Cashman
   Assistant United States Attorney
4  Post Office Box 1494
5  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
6

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 1 6 2023

SEAN F. McAVOY, CLERK
_____DEPUTY
RICHLAND, WASHINGTON

7              UNITED STATES DISTRICT COURT
8         FOR THE EASTERN DISTRICT OF WASHINGTON

9  UNITED STATES OF AMERICA,          Case No.: 4:22-CR-6001-MKD-2

10                 Plaintiff,          Plea Agreement

11
                    v.
12

13  CONNOR DUANE GOODMAN,

14                 Defendant.

15

16      Plaintiff United States of America, by and through Vanessa R. Waldref,

17  United States Attorney the Eastern District of Washington, and Patrick J.

18  Cashman, Assistant United States Attorney for the Eastern District of Washington,

19  and Defendant Connor Duane Goodman ("Defendant"), both individually and by

20  and through Defendant's counsel, Charlie Varni, agree to the following Plea

21  Agreement.

22      1.    Guilty Plea and Maximum Statutory Penalties

23      Defendant agrees to enter a plea of guilty to Count 1 of the Indictment filed

24  on January 4, 2022, which charges Defendant with Conspiracy to Make or Possess

25  an Unregistered Destructive Device, in violation of 18 U.S.C. § 371, a Class C

26  felony.

27      Defendant understands that the following potential penalties apply:

28          a.    a term of imprisonment of not more than 10 years;

PLEA AGREEMENT - 1

b.    a term of supervised release of not more than 3 years;

c.    a fine of up to $250,000; and

d.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 2

c.  the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.  the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.  the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.  the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.  Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a.  pleading guilty in this case may have immigration consequences;

b.  a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.  removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.  no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

PLEA AGREEMENT - 3

5.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

        a.    the right to a jury trial;

        b.    the right to see, hear and question the witnesses;

        c.    the right to remain silent at trial;

        d.    the right to testify at trial; and

        e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Conspiracy to Make or Possess and Unregistered Destructive Device, in violation of 18 U.S.C. § 371, the United States would have to prove the following beyond a reasonable doubt.

        a.    *First*, beginning on a date unknown but by on or about June 1, 2021, and ending on or about December 16, 2021, there was an agreement between two or more persons to commit at least one crime as charged in the Indictment;

PLEA AGREEMENT - 4

b.      *Second*, Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c.      *Third*, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy;

7.      Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

In March 2021, the Federal Bureau of Investigation (FBI) initiated an investigation into individuals associated with a group identified as the "Verified Bois." Included in the membership of this group were Daniel Anderson and Defendant, Connor Duane Goodman. Through the use of a confidential source ("CS"), the FBI learned the groups was involved in anti-government/anti-authority activities.

Using the CS, the FBI observed conversations in an online chat platform associated with the group and learned the group consisted of approximately 30 members from across the Pacific Northwest. The FBI was able to identify that the group was led by Defendant. Throughout the various chats, the group discussed a willingness to use force against law enforcement and that the group was "waiting" for an over-aggressive law enforcement action, especially regarding public protests, as an opportunity to target law enforcement officers with violence. The group conducted training events, where the members practiced small unit tactics,

PLEA AGREEMENT - 5

1  raids, firearms handling and manipulation, and survival skills. These trainings

2  took place in the Eastern District of Washington, including a location in

3  Ellensburg, Washington.

4       In June 2021, the CS reported that Anderson began to take a less active role

5  in the group because too many members of the group were not taking the training

6  seriously enough and that they did not understand that the groups was "training to

7  kill people right now." Additionally, Anderson indicated he planned to send

8  money to Defendant to purchase fireworks so that Anderson could construct an

9  improvised explosive device. The CS showed the FBI an online chat platform post

10  by Anderson wherein he sought to obtain nine to ten grams of flash powder and

11  was also seeking fireworks containing magnesium and phosphorus. Subsequently,

12  Defendant indicated he would be able to obtain the fireworks for Anderson.

13  Defendant later met with the CS and provided the CS the fireworks for delivery to

14  Anderson.

15       In July 2021, the CS, equipped with audio and video recording devices,

16  conducted a controlled meeting with Anderson, at Anderson's residence in

17  Kennewick, Washington. During this meeting, the CS provided Anderson the

18  fireworks procured by Defendant. The fireworks were described as

19  Thundercracker Fireworks. On the packaging of the fireworks the label states

20  "Warning – Explosives" and has regulatory indicates of UN0336 1.4G, which

21  indicates these are commercially procurable fireworks. The packing also indicates

22  the fireworks were manufactured in China. Photographs were taken of the

23  fireworks and packaging.

24       During this meeting Anderson can be heard describing how he had begun

25  constructing homemade explosive devices, including a claymore-style anti-

26  personnel explosive device using a motorcycle battery case, ball bearings, and

27  explosive materials derived from the fireworks he just received. No devices, other

28  than the glass jar device, were located in a search of Anderson's home. Anderson

PLEA AGREEMENT - 6

1   proceeded to state that he planned to use the device as a bobby trap. Anderson

2   further discussed the construction of a hand-held explosive devices using a Coke

3   can lined with ball bearings and filled with explosive material from the fireworks

4   and an electric fuse. Anderson proceeded to stated that these devices could be used

5   at protests or thrown over the front line of law enforcement officers and explode

6   behind them.

7       In July 2021, the CS conducted another in-person meeting with Anderson at

8   his residence. During this meeting, Anderson stated he was nearly finished with

9   constructing his explosive devices. Anderson explained he designed his explosive

10   devices to be small and portable so he could transport them in a backpack using his

11   motorcycle. Anderson said this was important so he could deploy his explosive

12   devices against law enforcement and escape from the scene easily and with speed.

13       In a second July 2021 controlled meeting, Anderson informed the CS that he

14   was having problems with one of his explosive device designs. Anderson stated

15   the ball bearings did not properly adhere to the sides of the device and therefore he

16   planned to use a ceramic adhesive. Anderson continued to state that he needed to

17   refine his design, that he would likely test the device, and that he needed mortar-

18   style fireworks that contained magnesium.

19       In August 2021, Anderson, during an in-person meeting with the CS, stated

20   he recently conducted an operational test of three types of explosive devices he

21   constructed. Anderson stated the "flashbang" design and the "throwables" were

22   successful but the claymore-style design needed to be more refined. The CS

23   informed his FBI handler that Anderson was seeking ammonium nitrate/fuel oil,

24   which is an industrial explosive. Despite these statements, law enforcement did

25   not locate multiple devices or remains of any tested devices.

26       In September 2021, Anderson discussed his explosive devices on an online

27   chat platform. Anderson called his devices "distraction devices." However,

28   Anderson subsequently stated the following with regard to the explosive devices:

PLEA AGREEMENT - 7

1  "Cause they sum bitches aren't training tools. I wouldn't be anywhere near this
2  thing. It's going to throw shrapnel like a MF. I have one that's unmolested, the
3  rest are full fucking yeet. It will throw birdshot at least 20 yards."

4        On October 29, 2021, the CS, equipped with an audio and video recording
5  device conducted a controlled meeting with Anderson at Anderson's residence.
6  During the meeting Anderson showed the CS the explosive devices Anderson
7  constructed. Anderson described the construction of the device to the CS as a
8  casing of a glass "Ball" mason jar, paper with Elmer's glue and birdshot as the
9  filler and fragmentation, a charge consisting of a plastic sandwich bag tube
10 wrapped with black electrical tape filled with a presumptive explosive compound,
11 a green hobby fuse, and a lid. Screenshots from the video recording device
12 depicted Anderson manipulating a glass jar with what appears to be an explosive
13 charge. During the conversation, Anderson explained that he reinforced the top of
14 the jar in order to prevent it from "popping off" during the explosive, forcing the
15 explosion outward through the glass jar. Anderson further stated that he has
16 several of these devices and previously tested at least one of them.

17       In a subsequent recorded call that occurred on December 2, 2021 with
18 Defendant, Defendant informed the CS that he knew the fireworks he provided the
19 CS to give to Anderson were used to construct an improvised explosive device and
20 that Defendant would sell fireworks to the CS so that the CS could build
21 improvised explosive devices similar to those Anderson constructed.

22       On December 3, 2021, the CS attended a multi-day group meeting with
23 members of the Verified Bois in Easton, Washington. In attendance at this
24 meeting were both Anderson and Defendant. The CS was equipped with both
25 audio and video recording devices. During this meeting, Defendant sold the CS
26 twelve aerial-style pyrotechnic fireworks so that the CS could construct improvised
27 explosive devices. Subsequently during this meeting, Anderson explained to the
28

PLEA AGREEMENT - 8

1    CS how to modify the fireworks to use the components in the construction of an
2    improvised explosive device.

3         The assigned FBI special agents consulted with the Bureau of Alcohol,
4    Tobacco, Firearms, and Explosives (ATF) confirmed that both Anderson nor
5    Defendant have firearms or explosive devices registered to him in accordance with
6    the National Firearms Act.

7         On December 16, 2021, members of the Inland Northwest Joint Terrorism
8    Task Force (INJTTF) agents, with the assistance of other law enforcement
9    agencies, executed a federal search warrant at ANDERSON's residence in
10   Kennewick, Washington. During the course of the search warrant, special agents
11   Special Agents, with the assistance of Anderson, located a single improvised
12   explosive device that was consistent with the device depicted in the CS video
13   recordings from October 29, 2021. The device is described as a small glass jar
14   containing wadding, birdshot, a sandwich baggie with explosive powder wrapped
15   in black electrical tape, and fuse. Additionally, special agents located glass mason
16   jar's consistent with the mason jars used by Anderson to construct his devices.

17        During a post-arrest interview, Anderson was advised of his *Miranda*
18   warnings, which he agreed to waive and speak with agents. This interview was
19   audio recorded, including the advisement of rights. Anderson subsequently
20   indicated in summary that he wanted to speak with them, that he knows his rights,
21   and that he will tell the agents when he wants to invoke his rights.

22        Anderson admitted to constructing an improvised explosive device and
23   provided agents with a hand-drawn diagram of how he constructed the device.
24   While the search for the device was being conducted, Anderson agreed to show
25   agents where the device would likely have been located. Upon Anderson showing
26   the agents the location, the agents located the device described above. Anderson
27   expressed he did not intend to hurt or use the device against law enforcement or

28

PLEA AGREEMENT - 9

individuals.  Anderson further stated that he developed the device using the fireworks provided by Defendant.

Simultaneous to the execution of the search warrants at Anderson's residence, special agents executed a search warrant at Defendant's residence. During the search, special agents Tannerite, ammunition in various calibers, multiple firearms, including a sawed-off shotgun and short-barreled rifle, multiple firearm parts, and electronic devices.

The FBI Laboratory has conducted an examination of the device and its components and determined the device as built by Anderson, using the fireworks provided by Defendant, constitutes and destructive device pursuant to 26 U.S.C. § 5845(a)(8).

8.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and the Defendant agree that the base offense level for Conspiracy to Make or Possess and Unregistered Destructive Device, in violation of 18 U.S.C. § 371 is 18.  U.S.S.G. § 2K2.1(a)(5).

PLEA AGREEMENT - 10

1    b. Special Offense Characteristics

2   The United States and the Defendant agree that Defendant's base offense

3 level is increased by 2 levels because the Device was a destructive device.

4 U.S.S.G. § 2K2.1(b)(3)(B).

5   The United States intends to argue the base offense level should be further

6 increased by 4 levels because the destructive device was possessed or transferred

7 with knowledge, intent, or reason to believe that it would be used or possessed in

8 connection with another felony offense. U.S.S.G. § 2K2.1(b)(6)(B). The

9 Defendant reserves the right to object to the applications of this specific offense

10 characteristic.

11    c. Acceptance of Responsibility

12   The United States will recommend that Defendant receive a three-level

13 downward adjustment for acceptance of responsibility, pursuant to U.S.S.G.

14 § 3E1.1(a), (b), if Defendant does the following:

15     i.  accepts this Plea Agreement;

16     ii.  enters a guilty plea at the first Court hearing that takes

17       place after the United States offers this Plea Agreement;

18     iii. demonstrates recognition and affirmative acceptance of

19       Defendant's personal responsibility for Defendant's

20       criminal conduct;

21     iv. provides complete and accurate information during the

22       sentencing process; and

23     v.  does not commit any obstructive conduct.

24   The United States and Defendant agree that at its option and on written

25 notice to Defendant, the United States may elect not to recommend a reduction for

26 acceptance of responsibility if, prior to the imposition of sentence, Defendant is

27 charged with, or convicted of, any criminal offense, or if Defendant tests positive

28 for any controlled substance.

PLEA AGREEMENT - 11

1              d.    <u>No Other Agreements</u>

2          The United States and Defendant have no other agreements regarding the

3    Guidelines or the application of any Guidelines enhancements, departures, or

4    variances.  Defendant understands and acknowledges that the United States is free

5    to make any sentencing arguments it sees fit, including arguments arising from

6    Defendant's uncharged conduct, conduct set forth in charges that will be dismissed

7    pursuant to this Agreement, and Defendant's relevant conduct.

8              e.    <u>Criminal History</u>

9          The United States and Defendant have no agreement and make no

10   representations about Defendant's criminal history category, which will be

11   determined by the Court after the United States Probation Office prepares and

12   discloses a Presentence Investigative Report.

13        10.   <u>Incarceration</u>

14         The United States agrees to recommend a sentence at the low-end of the

15   Guidelines, as calculated by the United States, and in no event will the United

16   States recommend more than 37 months incarceration.

17         Defendant may recommend any legal sentence.

18        11.   <u>Supervised Release</u>

19         The United States and Defendant each agree to recommend 3 years of

20   supervised release.  Defendant agrees that the Court's decision regarding the

21   conditions of Defendant's Supervised Release is final and non-appealable; that is,

22   even if Defendant is unhappy with the conditions of Supervised Release ordered by

23   the Court, that will not be a basis for Defendant to withdraw Defendant's guilty

24   plea, withdraw from this Plea Agreement, or appeal Defendant's conviction,

25   sentence, or any term of Supervised Release.

26         The United States and Defendant agree to recommend that in addition to the

27   standard conditions of supervised release imposed in all cases in this District, the

28   Court should also impose the following conditions:

PLEA AGREEMENT - 12

a.     The United States Probation Officer may conduct, upon
reasonable suspicion, and with or without notice, a search of
Defendant's person, residences, offices, vehicles, belongings,
and areas under Defendant's exclusive or joint control.

b.     Defendant shall participate and complete such drug testing and
drug treatment programs as the Probation Officer directs.

c.     Defendant shall complete mental health evaluations and
treatment, including taking medications prescribed by the
treatment provider.  Defendant shall allow reciprocal release of
information between the Probation Officer and the treatment
provider.  Defendant shall contribute to the cost of treatment
according to the Defendant's ability.

12.    Criminal Fine

The United States and Defendant may make any recommendation
concerning the imposition of a criminal fine.  Defendant acknowledges that the
Court's decision regarding a fine is final and non-appealable; that is, even if
Defendant is unhappy with a fine ordered by the Court, that will not be a basis for
Defendant to withdraw Defendant's guilty plea, withdraw from this Plea
Agreement, or appeal Defendant's conviction, sentence, or fine.

13.    Abandonment

Defendant, Connor Duane Goodman, agrees to abandon the following listed
assets to the Federal Bureau of Investigation (FBI):

-    Firearm CZ P-10 C S/N UA09003; split from this firearm were the
following: one magazine with ammunition, one round chambered, 16
total; Streamlight TLR7, Trijicon, 268489 red dot sight;

-    Mag pouch with mags and patch;

-    Water proof blue bag with loose ammunition;

-    Tannerite 2lb brick packs in packaging;

PLEA AGREEMENT - 13

1       - Tannerite 1lb brick pack in packaging;

2       - 21 boxes of 7.62 caliber ammunition in carboard box;

3       - Three (3) 9mm Sellier & Bellot ammunition boxes;

4       - One (1) 9mm Herter's ammunition box;

5       - One (1) box of .223 Remington loose ammunition and one (1) magazine;

6       - Rifle Lower Receiver, Firearm other;

7       - Lower Receiver kit,

8       - .45 caliber barrel,

9       - Two (2) 7.62 extended magazines,

10      - Three (3) 7.62 extended magazines,

11      - Various magazines and loose ammunition;

12      - Carbine rifle bolt "MA DICKBUTT C158 BCG" in packaging;

13      - 9mm magazine drum with .380 ammunition;

14      - Lower receiver kit;

15      - Three (3) loaded magazines;

16      - Lower receiver for carbine rifle;

17      - .22 rifle;

18      - Bolt action rifle; magazine inserted in bolt action rifle;

19      - Black and green spray painted AK style rifle; magazine inserted with

20         rounds from this rifle;

21      - Spray painted pump action shot gun; six (6) shotgun shells loaded in this

22         item

23      - Short barrel M4; Red dot scope (#480642875) and flashlight attached to

24         this item; magazine loaded inserted in this item;

25      - 9mm semi-automatic rifle with arm brace; loaded magazine inserted in

26         this item;

27      - Bolt action rifle wooden stock;

28      - Winda Fireworks Box with fireworks and two (2) mortar tubes;

PLEA AGREEMENT - 14

1      -   Two (2) G Force mortar tubes; and,

2      -   Green hobby-type fuse

3        The Defendant agrees to take all steps as requested by the United States and

4   FBI to effectuate the abandonment of the above-listed assets to FBI and hereby

5   agrees to execute any and all forms and pleadings necessary to effectuate such

6   abandonment. Defendant consents to the disposal, including destruction, of the

7   assets.

8        The Defendant waives any right he might otherwise have had to receive

9   notice or a hearing with respect to any motion, pleading, order, or any other action

10  that FBI might take, in its sole discretion, to carry out the abandonment,

11  disposition, and destruction of the assets. Defendant=s waiver includes, without

12  limitation, all common law, statutory, and constitutional claims or challenges, on

13  any grounds, arising at any time from, or relating to, the seizure, abandonment,

14  disposition, and destruction of assets, including any such claim for attorney fees

15  and litigation costs.

16
17      14.   Mandatory Special Penalty Assessment

18       Defendant agrees to pay the $100 mandatory special penalty assessment to

    the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C.

19  § 3013.

20
21      15.   Payments While Incarcerated

22       If Defendant lacks the financial resources to pay the monetary obligations

23  imposed by the Court, Defendant agrees to earn money toward these obligations by

24  participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

25      16.   Additional Violations of Law Can Void Plea Agreement

     The United States and Defendant agree that the United States may, at its

26  option and upon written notice to the Defendant, withdraw from this Plea

27  Agreement or modify its sentencing recommendation if, prior to the imposition of

28

PLEA AGREEMENT - 15

1  sentence, Defendant is charged with or convicted of any criminal offense or tests
2  positive for any controlled substance.

3      17.    Waiver of Appeal Rights

4      Defendant understands that Defendant has a limited right to appeal or
5  challenge Defendant's conviction and the sentence imposed by the Court.

6      Defendant expressly waives all of Defendant's rights to appeal Defendant's
7  conviction and the sentence the Court imposes, if the Court sentences the
8  Defendant to a term of imprisonment that is no greater than the high-end of the
9  Guidelines as currently calculated by the United States.  The United States
10 currently calculates the high-end of the Guidelines as forty-six (46) months.

11     Defendant expressly waives Defendant's right to appeal any fine or term of
12 supervised release imposed by the Court.

13     Defendant expressly waives the right to file any post-conviction motion
14 attacking Defendant's conviction and sentence, including a motion pursuant to 28
15 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from
16 information not now known by Defendant and which, in the exercise of due
17 diligence, Defendant could not know by the time the Court imposes sentence.

18     Nothing in this Plea Agreement shall preclude the United States from
19 opposing any post-conviction motion for a reduction of sentence or other attack
20 upon the conviction or sentence, including, but not limited to, writ of habeas
21 corpus proceedings brought pursuant to 28 U.S.C. § 2255.

22     18.    Compassionate Release

23     In consideration for the benefits Defendant is receiving under the terms of
24 this Plea Agreement, Defendant expressly waives Defendant's right to bring any
25 motion for Compassionate Release other than a motion arising from one of the
26 specific bases set forth in this paragraph of this Plea Agreement.  The United States
27 retains the right to oppose, on any basis, any motion Defendant files for
28 Compassionate Release.

PLEA AGREEMENT - 16

The only bases on which Defendant may file a motion for Compassionate Release in the Eastern District of Washington are the following:

    a.    <u>Medical Condition of Defendant</u>

        i.    Defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia; or

        ii.    Defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which Defendant is not expected to recover.

    b.    <u>Age of Defendant</u>

        i.    Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of Defendant's term of imprisonment, whichever is less; or

        ii.    Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

    c.    <u>Family Circumstances</u>

PLEA AGREEMENT - 17

1           i.       The caregiver of Defendant's minor child or children has

2                      died or become incapacitated, and Defendant is the only

3                      available caregiver for Defendant's minor child or

4                      children; or

5           ii.      Defendant's spouse or registered partner has become

6                      incapacitated, and Defendant is the only available

7                      caregiver for Defendant's spouse or registered partner.

8       d.    <u>Subsequent Reduction to Mandatory Sentence</u>

9           i.       Defendant pleaded guilty to an offense which, on the date

10                    of Defendant's guilty plea, carried a mandatory minimum

11                    sentence; and

12          ii.     after the entry of judgment, the length of the mandatory

13                    minimum sentence for Defendant's offense of conviction

14                    was reduced by a change in the law; and

15         iii.    the application of the reduced mandatory minimum

16                    sentence would result in Defendant receiving a lower

17                    overall sentence.

18       e.    <u>Ineffective Assistance of Counsel</u>

19           i.       Defendant seeks Compassionate Release based on a

20                    claim of ineffective assistance of counsel arising from

21                    information that Defendant both

22               1.    did not know at the time of Defendant's guilty

23                        plea, and

24                 2.    could not have known, in the exercise of due

25                        diligence, at the time the Court imposed sentence.

26

27

28

PLEA AGREEMENT - 18

19.   <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

      a.    this Plea Agreement shall become null and void;

      b.    the United States may prosecute Defendant on all available charges;

      c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

      d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20.   <u>Waiver of Attorney Fees and Costs</u>

Defendant agrees to waive all rights Defendant may have under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to

PLEA AGREEMENT - 19

this Plea Agreement or any charges previously dismissed or not brought as a result of this Plea Agreement).

21.    <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney


Patrick J. Cashman                           3-16-2023
Assistant United States Attorney             Date

PLEA AGREEMENT - 20

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____          3-16-23
Connor Duane Goodman                          Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          3-16-2023
Charlie Varni                                        Date
Attorney for Defendant

PLEA AGREEMENT - 21